IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| J.S.R., a minor, by his Mother, Susan Tarter Childs, as his Next Friend, and SUSAN TARTER CHILDS, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 1:13-CV-582-WKW [WO] |
| DALE COUNTY BOARD OF EDUCATION, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This action arises under various federal statutes including the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq*., Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, § 504 of the Rehabilitation Act, 29 U.S.C. § 794, and 42 U.S.C. § 1983 for alleged violations of the Fourteenth Amendment.   The suit follows an administrative due process hearing held pursuant to the IDEA and Alabama law.

Before the court are cross-motions for summary judgment, (Docs. # 25, 27), which have been briefed fully, (Docs. # 26, 29, 30, 31, 32, 33, 34, 35, 40, 41, 42,

43, 44, 45).[1] [2] [3] Defendant moves in the alternative for a judgment on the pleadings. Upon consideration of the parties' arguments, the evidence, including the administrative record, and relevant law, the court finds that Plaintiffs' motion for summary judgment is due to be granted on Count I, Defendant's motion for summary judgment is due to be granted with respect to any discrimination or retaliation claim related to J.S.R.'s exclusion from baseball (Counts II and III) and to Plaintiffs' equal protection claim asserted as part of Count IV. The cross-motions for summary judgment are due to be denied in all other respects.

## I.  JURISDICTION AND VENUE

The court exercises subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Personal jurisdiction and venue are uncontested.

## II.  STANDARDS OF REVIEW

### A.    Summary Judgment

To succeed on summary judgment, the movant must demonstrate "that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a

---

[1] With the court's leave, Defendant substituted a replacement brief (Doc. # 40) for the original summary judgment brief (Doc. # 28).

[2] Plaintiffs designate their motion as a motion for partial summary judgment even though they request summary judgment on all of her claims. The motion is partial in that they seek a ruling that Plaintiffs are entitled under the IDEA for their attorney's fees, but Plaintiffs do not yet seek a specific sum for fees.

[3] Any citation to document numbers assigned by CM/ECF are to the page numbers created by CM/ECF. Where record citations lack a reference to CM/ECF document numbers, the citations are to the page numbers provided on the documents as they were prepared originally.

matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence and the inferences from that evidence in the light most favorable to the nonmovant. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.*; Fed. R. Civ. P. 56(c)(1)(A). Or, the movant can assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B). If the movant meets its burden, the burden shifts to the nonmoving party to establish – with evidence beyond the pleadings – that a genuine dispute material to each of its claims for relief exists. *Celotex*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).[4]

---

[4] Defendant has set out the standard of review for judicial review of an administrative hearing officer's decision under the IDEA. (Doc. # 40, at 21–23.) *See also Loren F. ex rel. Fisher v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1313–14 (11th Cir. 2003) (describing the federal court's standard of review of an IDEA case after an administrative decision is rendered). However, neither party – particularly Defendant – challenges the outcome of the administrative decision. (*See* Def.'s Brief, Doc. # 40, at 22–23 ("The [c]ourt's independent review of the administrative record will show that [the] decision is clearly supported by the law and the factual evidence in the administrative record.").) The only IDEA issue before the court is in Count I,

B.      **Judgment on the Pleadings**

"Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008).  "All facts alleged in the complaint must be accepted as true and viewed in the light most favorable to the nonmoving party." *Id.*[5]

### III.  BACKGROUND

As a preface to the facts supporting Plaintiffs' claims, the court begins with an explanation of the federal statutes affording special education and related services, accommodations, and procedural protections to disabled students.

A.      **Relevant Statutes**

1.      *The IDEA*

Originally enacted in 1970 as the Education of the Handicapped Act ("EHA") Congress passed the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education [("FAPE")] that

---

which is Plaintiffs' claim for attorney's fees as prevailing parties in the administrative due process hearing.  The parties dispute whether Plaintiffs are in fact prevailing parties, but this is a legal question that can be decided in accordance with Rule 56.  In the absence of a challenge to the propriety of the hearing officer's decision, the IDEA standard of review offered by Defendant will not be used.

[5] Defendant offers no explanation for why a judgment on the pleadings would be appropriate.

emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A).  The IDEA defines a FAPE as

> special education and related services that – (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with [a disabled student's] individualized education program [("IEP")]. . . .

*Id.* at § 1401(9).  The IDEA contains "an affirmative obligation of every [local] public school system to identify students who might be disabled and evaluate those students to determine whether they are indeed eligible."  *N.G. v. D.C.*, 556 F. Supp. 2d 11, 16 (D.D.C. 2008) (citing 20 U.S.C. § 1412(a)(3)(A)).   This obligation is known as "Child Find," and a local school system's "[f]ailure to locate and evaluate a potentially disabled child constitutes a denial of FAPE."  *Id.* A state must evaluate a child for a disability under the IDEA upon the request of the child's parent.  20 U.S.C. § 1414(a)(1)(B).

A child with a disability is one "with intellectual disabilities, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance . . . , orthopedic impairments, autism, traumatic brain injury, other health impairments, *or specific learning disabilities*" "who, by reason thereof, needs special education and related services."  *Id.* at § 1401(3) (emphasis added).  Once a child is determined to have a

disability, and his parent consents to the provision of special education services, local educational agencies are obligated by the IDEA to reevaluate him when it is determined that a reevaluation is warranted or the child's parent or teacher asks for reevaluation. *Id*. at § 1414(a)(2)(A). Subject to a few exceptions, reevaluations should not occur more often than annually but at least every three years. *Id.* at § 1414(a)(2)(B).

The local school system must develop an IEP for each child with a disability covered by the IDEA. "The IEP is a comprehensive document developed by a team of parents, teachers, and other school administrators outlining the goals of the child, and the special education and related services needed to meet those goals. *M.T.V. v. DeKalb Cnty. Sch. Dist.*, 446 F.3d 1153, 1157 (11th Cir. 2006) (citing 20 U.S.C. § 1414(d)).

States are required by the IDEA to "establish and maintain procedures in accordance with [the IDEA] to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a [FAPE]." 20 U.S.C. § 1415(a). The requisite safeguards include the provision of

> [a]n opportunity for any party to present a complaint – (A) with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of [FAPE] to such child; and (B) which sets forth an alleged violation that occurred not more than [two] years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint . . . .

*Id.* at § 1415(b)(6).  Generally, where the local school system is unable to resolve a complaint, the complainant is entitled to "an impartial due process hearing . . . conducted by the State educational agency."  *Id.* at § 1415(f)(1)(A).

In Alabama, the aggrieved parent files a complaint with the State Department of Education and requests an impartial due process hearing.  The State Superintendent of Education appoints a qualified hearing officer to conduct the hearing.  *See generally* Ala. Admin. Code  r. 290-8-9-.08.  The hearing is conducted by an impartial hearing officer with knowledge of the IDEA who is not involved in the child's education.  20 U.S.C. at § 1415(f)(3)(A).  The impartial hearing officer is required to render a decision as to whether the child received a FAPE, and he or she may find that a child did not receive a FAPE "only if the [local school system's] procedural inadequacies – (I) impeded the child's right to a [FAPE]; (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of [FAPE] to the parents' child; or (III) caused a deprivation of educational benefits."  *Id.* at § 1415(f)(3)(E).  A party aggrieved by the hearing officer's decision may bring a civil action in state or federal court.  *Id.* at § 1415(i)(2)(A).  Further, a prevailing party may initiate an action in federal district court to recoup his or her reasonable attorney's fees.  *Id.* at § 1415(i)(3)(A)–(C).

## 2.    *Section 504*

All children with disabilities under the IDEA, as well as some children who are ineligible for special education under the IDEA, are also protected by § 504 of the Rehabilitation Act.  Section 504 is thus broader than the IDEA in its coverage of students with disabilities.  It is distinguishable from the IDEA in that it "provide[s] relief from discrimination while the IDEA provides relief from inappropriate educational placement decisions, regardless of discrimination." *Hornstine v. Twp. of Moorestown*, 263 F. Supp. 2d 887, 901 (D.N.J. 2003); *see also* 2 Ronna Greff Schneider, Education Law § 6:15 ("In contrast with the affirmative obligation for a [FAPE] under the IDEA, § 504 is phrased negatively, prohibiting discrimination on the basis of disability.").  "[I]n the special education context," § 504 prohibits a school district from "exclud[ing], deny[ing] benefits to, or discriminat[ing] against any student solely on the basis of his or her disability." *Jennifer B. v. Chilton Cnty. Bd. of Educ.*, 891 F. Supp. 2d 1313, 1321 (M.D. Ala. 2012) (internal citation omitted).  The U.S. Department of Education has promulgated regulations under § 504.  *See* 34 C.F.R. § 104.1.  "[These federal] regulations clarify that a school district has an affirmative duty to identify, locate, and evaluate all children with disabilities in order to ensure that they receive a FAPE." *Kimble v. Douglas Cnty. Sch. Dist. RE-1*, 925 F. Supp. 2d 1176, 1181 (D. Colo. 2013) (citing 34 C.F.R. §§ 104.32–104.35)).  "[T]he provision of an

appropriate education is the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met. . . ." 34 C.F.R. § 104.33(b)(1)

At the request of a parent or a school official (usually a classroom teacher), a school district should evaluate a student to determine whether his physical or mental impairments substantially limit his ability to learn and participate in a classroom environment. *See* 34 C.F.R. § 104.35(a) (requiring evaluation of "any person who, because of handicap, needs or is believed to need special education or related services"). A student is "handicapped" if he or she "(i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 34 C.F.R. § 104.3(j)(1). If the child is determined to be handicapped and in need of special education and related services, the school district must provide reasonable accommodations to assist the child. The school district must also make "periodic reevaluations of students who have been provided special education and related services." 34 C.F.R. § 104.35(d).

To make reasonable accommodations, the school district does not have to fundamentally or substantially alter its programs. *Mark H. v. Hamamoto*, 620 F.3d 1090, 1098 (9th Cir. 2010). Moreover, the school district does not have to provide

"potential-maximizing education" for the child – just "reasonable accommodations that give [him] the same access to the benefits of a public education as all other students." *J.D. v. Pawlet Sch. Dist.*, 224 F.3d 60, 71 (2d Cir. 2000).  The school system must conduct an "individualized analysis" of the child's circumstances to determine what accommodations might offer the child equal and "meaningful access" to the benefit of public education available to non-disabled students.  *Mark H.*, 620 F.3d at 1098.

The accommodations to be provided are typically documented by the school in a § 504 Plan, sometimes called a Personal Education Plan ("PEP"), which is devised by a team of people that normally includes the child's teachers, school principal, and parent(s).  *See* 34 C.F.R. § 104.35(c)(3) (requiring that the school "ensure that the [child's] placement decision is made by a group of persons . . . knowledgeable about the child).  School officials review and make adjustments to a student's § 504 plans annually.  "An IEP is sufficient to satisfy the [FAPE] requirement under Section 504, but a [§] 504 plan [or PEP] will not necessarily satisfy the same requirement under the IDEA."  *K.D. v. Starr*, 55 F. Supp. 3d 782, 785 n.3 (D. Md. 2014).

Finally, the Department of Education's regulations for § 504 include "procedural safeguards."  34 C.F.R. § 104.36.  School districts must "establish and implement . . . a system of procedural safeguards that includes notice, an

opportunity for the parents or guardian of the person to examine relevant records, an impartial hearing with opportunity for participation by the person's parents or guardian and representation by counsel, and a review procedure." *Id.* A district's compliance with the IDEA's similar procedural safeguards meets that requirement. *Id.*

**B.**   **Facts**

1.   ***J.S.R.'s Experience in Dale County Schools***

Since first grade, Plaintiff J.S.R. has been enrolled in the Dale County Schools. He has repeated the first and fourth grades and is therefore two years older than his classmates.[6] The alleged ADA and § 504 violations at issue in this case occurred during his time as a student at G. W. Long School in Ariton,

---

[6] The following table displays the dates that J.S.R. was in each grade level and the time that Defendant was providing J.S.R. with special education and related services or accommodations pursuant to § 504 or the IDEA.

| | | |
|---|---|---|
| First Grade | 2003–04 academic year | |
| First Grade (R) | 2004–05 academic year | |
| Second Grade | 2005-06 academic year | |
| Third Grade | 2006–07 academic year | |
| Fourth Grade | 2007–08 academic year | |
| Fourth Grade (R) | 2008–09 academic year | |
| Fifth Grade | 2009–10 academic year | (PEP implemented) |
| Sixth Grade | 2010–11 academic year | (PEP continued) |
| Seventh Grade | 2011–12 academic year | (PEP continued) |
| Eighth Grade | 2012–13 academic year | (IEP implemented in January 2013) |
| Ninth Grade | 2013–14 academic year | (IEP continued) |
| Tenth Grade | 2014–15 academic year | (IEP continued) |

Alabama during his seventh- and eighth- grade academic school years.[7]  Plaintiffs' administrative due process complaint was filed in October 2012 during J.S.R.'s eighth-grade year.  The due process complaint raised the ADA, § 504, and civil rights claims under § 1983 now before this court.   Plaintiffs filed this suit in August 2013 at the beginning of his ninth-grade year.[8]  J.S.R. has recently finished tenth grade and, by the court's calculation, is approaching his eighteenth birthday if he has not already turned eighteen.

J.S.R. was evaluated for special education services in second grade (2007) and during his second year in fourth grade (2009), but he did not qualify under the discrepancy model method that Defendant used for classifying children as learning

---

[7]  Plaintiffs aver that they are "well aware of the [two-]year statute of limitations" and assert that they "did not request relief beyond the statute of limitations.  To the contrary, [Ms. Childs] testified that she and J.R.S. [sic] were satisfied with J.S.R.'s teachers during his [fifth-] and sixth-] grade years."  (Doc. # 44, at 8.)  Plaintiffs reference the IDEA's statute of limitations, *see* 20 U.S.C. § 1415(b)(6), but neither party addresses that Alabama's two-year statute of limitations for personal injury claims applies to Plaintiffs' discrimination claims under the ADA and § 504.  *Everett v. Cobb Cnty. Sch. Dist.*, 138 F.3d 1407, 1409–10 (11th Cir. 1998); *Horsley v. Univ. of Ala.*, 564 F. App'x 1006, 1008 (11th Cir. 2014).  At the pretrial conference held on May 15, 2015, Plaintiffs assented to this statute of limitations and say they only discuss Defendant's actions going back to J.S.R.'s elementary school years in order to provide context for Defendant's actions in later years.  Counsel also expressed her belief that IDEA, ADA, and/or § 504 violations have been ongoing through the tenth grade, but there is no dispute that events following J.S.R.'s eighth-grade year have not been administratively exhausted.

[8]  Although Plaintiffs discuss circumstances that have arisen or persisted during J.S.R.'s ninth- (2013–14) and tenth-grade (2014–15) academic school years, these facts are not in the operative pleading which has not been amended since October 2013.  (*See* Am. Compl.)  Additionally, Plaintiffs' complaints against Defendant arising since the completion of the due process proceedings may not be considered until he and Ms. Childs exhaust their administrative remedies.

disabled and eligible for special education services.[9]   Defendant placed J.S.R. under a personal education plan ("PEP"), pursuant to § 504, during his fifth-grade year at the prompting of his fifth-grade teacher.  (*See* Def.'s Ex. I (Doc. # 27-9).) The PEP provided, among other things, that:  J.S.R. be seated in an area free from distraction; that J.S.R. be given time to clean his desk and locker and to organize his materials each day; that J.S.R.'s worksheets be visibly clear and adequately spaced; that J.S.R. not be required to copy from the board, if possible; that J.S.R be assigned a reduced amount of school work; that J.S.R. be told the purpose of each lesson and what he would be expected to do; that J.S.R. be given one direction at a time; that J.S.R. not be called upon to read orally in class; that J.S.R. be given tests orally when needed; that J.S.R. not be penalized for spelling errors in non-spelling related academic assignments; and that J.S.R. be offered a substitute assignment in lieu of a test as needed.   These were common accommodation strategies that Defendant's employees believed would help J.S.R.

---

[9] This method of evaluation requires the district to determine whether there is a sixteen point or greater discrepancy between what a student presumably can do, based on his IQ scores, and what he is actually doing, based on his achievement tests.  (Doc. # 30, at 117.)  According to the testimony of Mia Jones, a Dale County Schools psychometrist, the school system has "always used" that model for assessing learning disabilities in students.  (Doc. # 30, at 118.)  Dr. Michael Passler, who later tested J.S.R. and diagnosed his learning disabilities, testified that "the discrepancy model has been under question" for some time "because it misses so many" students with learning disabilities.   (Doc. # 30, at 1132.)   Other methods of diagnosing learning disabilities include what Dr. Passler called "response to instruction" and "strengths and weaknesses."   (Doc. # 30, at 1133.)   He also testified that, to his knowledge, the State of Alabama has always made exceptions for "clinical judgment" when a student appears to have a learning disability but does not qualify under the severe discrepancy model.  (Doc. # 30, at 1133.)  Plaintiffs say that Defendant should have used another method to diagnose J.S.R.'s learning disability.

With the assistance of his fifth and sixth grade teachers who followed the PEP, it is undisputed that J.S.R. did well academically.  The PEP remained in place when J.S.R. moved to seventh grade.  At this point, Plaintiffs say that the PEP was just a "sham" that was "inappropriate" for J.S.R. and did not, in theory or practice, accommodate his individual needs or provide him with a FAPE.  (Doc. # 26, at 19.)  Defendant's failure to accommodate J.S.R. was most evident in J.S.R.'s math class performance.  Although he was not identified to receive special education services, J.S.R. was removed from his seventh-grade math class and placed on the computer-based I-learn math program under the supervision of a special education teacher, Dana Barron, working at a first-grade math level. J.S.R.'s PEP was modified to include the I-learn math program as one of his accommodations.  Defendant passed J.S.R. from seventh to eighth grade even though he failed most of his seventh-grade classes.  During J.S.R.'s seventh-grade school year, Ms. Childs had J.S.R. evaluated by a neuropsychologist, Dr. Passler, at her own expense.  Dr. Passler determined that J.S.R. had a learning disability and that J.S.R. needed special education services.

On October 10, 2012, Ms. Childs filed a due process hearing complaint with the Alabama Department of Education.  In November 2013, J.S.R. was referred for special education eligibility and services.  On January 8, 2013, Defendant officially determined that J.S.R. was eligible for special education and related services,

identified J.S.R. as having "specific learning disability," and provided J.S.R. with an IEP. (*See* Def.'s Exs. Y & Z (Docs. # 27-26, 27-27).)[10] Ms. Childs complains that the IEP failed to include (1) a provision that J.S.R. be removed from his math class for thirty minutes each day for special education or (2) any provision concerning J.S.R.'s involvement in school sports. Plaintiffs contend that J.S.R. needs to be allowed to play on the school baseball team for his social development and as a motivator to J.S.R. to apply himself academically.[11] J.S.R. continues to receive special education services under the IEP.

### 2.    *Administrative Due Process Decision*

In response to the due process complaint, Steve P. Morton, Jr., the state-appointed impartial hearing officer, held a hearing spanning six nonconsecutive days in January, February, and April 2013. On June 13, 2013, Hearing Officer Morton rendered a fifty-two page decision substantially in favor of J.S.R. (Doc. # 27-1 ("Admin. Decision").) Nevertheless, Defendant disputes that Plaintiffs were "prevailing parties" in the IDEA administrative proceedings.

---

[10] Since the administrative due process hearing, Plaintiffs represent that J.S.R. has also been diagnosed with a panic disorder, and Defendant is allegedly aware of the diagnosis. For purposes of the time period at issue in this suit, J.S.R.'s disability was his learning disability.

[11] For different reasons, J.S.R. was not permitted to play baseball in seventh or eighth grade. In seventh grade, J.S.R. had been suspended from school for bringing brass knuckles to campus, and his suspension coincided with the day of team tryouts. In eighth grade, J.S.R.'s grades were so poor that he was ineligible to play on the team. In ninth grade, J.S.R. tried out for and made the varsity team, but the coach moved him to the junior varsity team. By tenth grade, J.S.R. was too old to play on the junior varsity team, and he did not make the varsity team, so he did not play at all last season. Plaintiffs contend that J.S.R.'s exclusion from baseball has been in retaliation for his complaints against Defendant.

Hearing Officer Morton declined to consider Plaintiffs' claims raised under § 504, the ADA, the No Child Left Behind Act, or 42 U.S.C. § 1983, citing his lack of jurisdiction over non-IDEA claims. (Admin. Decision, at 9–10.) He also declined to consider issues that were not timely or properly raised in the due process complaint. (Admin. Decision, at 10–11.) Hearing Officer Morton enunciated the following "general" issues that were properly before him:

> 1) Was J denied a [FAPE], due to [Defendant's] failure to properly identify, locate, and evaluate J pursuant to Child Find?

> 2) Whether . . . J is due reimbursement for the cost of an independent Neuropsychological Exam secured by [Ms. Childs's] from Dr. Michael Passler (incorporating two testing dates, October 23, 2012 & October 31, 2012)?

> 3) Was J denied a FAPE due to [Defendant's] failure to properly develop and implement the [IEP] and did [Defendant] discriminate against J?

(Admin. Decision, at 11.)[12]

As to the first issue, Hearing Officer Morton concluded that Defendant failed in its duty under Child Find, but he found that the evidence did not support Ms. Child's contention that Defendant should have identified J.S.R. as of October 12, 2010, two years prior to her filing the due process complaint. Instead, the

---

[12] Included within these main issues, the hearing officer noted "component" issues including whether the two-year statute of limitation in IDEA was due to be adjusted because Ms. Childs had been prevented from requesting a due process hearing, whether J.S.R. was prevented from playing baseball, and whether that violated his right to FAPE, and if J.S.R. has been denied a FAPE due to a violation of Child Find, how long the denial of a FAPE lasted. (Admin. Decision, at 11–12.)

hearing officer ruled that the evidence "support[ed] the conclusion that as of November 29, 2011, the District had sufficient information that should have triggered notice . . . ." (Admin. Decision, at 35.)   The evidence supporting this conclusion included the letter from Ms. Childs to the district on November 29, 2011, raising her concerns about a lack of proper adjustments to J.S.R.'s § 504 plan based on his developmental and learning disorders, in addition to what the District knew about J.S.R. (*e.g.*, that he had repeated two grades), J.S.R.'s very poor academic performance from the outset of seventh grade, identified behavioral concerns, and the timing of the § 504 review.   (Admin. Decision, at 30–31.) Hearing Officer Morton found that the special education coordinator for Dale County Schools, Beverly Lampkin, did not deny that communication continued to flow from Ms. Childs from "late 2011 through the fall of 2012."   (Admin. Decision, at 33.)   Ultimately, Hearing Officer Morton determined that Defendant denied a FAPE to J.S.R. for roughly one year from November 29, 2011 until November 11, 2012, when J.S.R. was referred and identified for special education services.  (Admin. Decision, at 36.)

As to the second issue, Hearing Officer Morton found that Defendant was obligated to pay the costs incurred by Ms. Childs in 2012 to have J.S.R. independently tested by Dr. Passler.  (Admin. Decision, at 42.)

Finally, on the third question, Hearing Officer Morton determined that J.S.R. was denied a FAPE to the extent that he was not provided with an IEP from roughly December 1, 2011, through January 10, 2013.  (Admin. Decision, at 44.)  However, Hearing Officer Morton concluded that J.S.R.'s exclusion from participation in baseball in seventh or eighth grade did not constitute discrimination.[13]

As compensatory educational relief for J.S.R., Hearing Officer Morton ordered Defendant to furnish services through the Learning Center to recover at least two and up to three semesters of one-on-one services in math.  Hearing Officer Morton further ordered that Defendant continue with the responsibility to pay for at least one year of counseling for J.S.R. with the counselor with whom the family already had an established relationship.

## C.   Procedural History

Plaintiffs filed this suit on August 14, 2013, and amended their complaint on October 30, 2013.  None of the facts alleged in the Amended Complaint relates to events or circumstances arising during J.S.R.'s ninth- or tenth-grade years, and as stated previously, the court proceeds on the assumption that J.S.R.'s seventh- and

---

[13] Mr. Morton concluded that the consequences of J.S.R.'s own behavior that led to a brief suspension caused him to be unable to try out for baseball in seventh grade, and that the application of the Alabama High School Athletic Association's standards, over which Mr. Morton had no authority, later precluded J.S.R.'s participation on account of his poor grades. (Admin. Decision, at 44–45.)

eighth-grade years are the subject of Plaintiffs' claims.  The Amended Complaint sets out four counts.

Count I:  Plaintiffs were required to retain legal counsel, Bobbie S. Crook and Michael P. Lasseter, to assist with the administrative claim.  Plaintiffs have incurred attorney's fees in excess of $100,942 and expenses totaling $4,630, for which they seek reimbursement through this action as prevailing parties under the IDEA.

Counts II and III:  Plaintiffs sue Defendant for intentional discrimination and retaliation against J.S.R. on the basis of his disabilities and for violations of Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act.  Plaintiffs' discrimination claims are based upon Defendant's deprivation of reasonable, individualized accommodations for J.S.R, Defendant's failure to provide a FAPE, and Defendant's exclusion of J.S.R. from sports.  The Amended Complaint is non-specific about the retaliation J.S.R. allegedly suffered.[14]

Count IV:  Plaintiffs sue Defendant pursuant to 42 U.S.C. § 1983 for allegedly violating J.S.R.'s constitutional rights under the Fourteenth Amendment to substantive and procedural due process and equal protection.

---

[14] Plaintiffs allege in their briefing (but not their pleading) that Defendant has retaliated by (1) not permitting J.S.R. to play baseball during his tenth-grade year (*i.e.*, the most recent academic school year), (2) not providing counseling to J.S.R., and (3) filing truancy petitions against J.S.R. for tardies and absences that were excused by his doctor.  (Doc. # 26, at 26.) These grievances concerning Defendant's provision of counselling and its acquiescence to truancy proceedings appear to have been resolved during mediation.

Concerning Counts II, III, and IV, Plaintiffs allege that Defendant has subjected J.S.R. to humiliation, embarrassment, and degradation due to his disabilities, denied him access to sports, and caused him to suffer permanent educational and social setbacks.  Plaintiffs request that this court award J.S.R. extensive declaratory, injunctive, and monetary relief.  (Am. Compl. at 12–14.)

There has been little discovery in this case; the parties rely primarily on the evidence submitted during the administrative proceeding.  The parties have filed cross-motions for summary judgment.  Plaintiffs request summary judgment on each of their claims.  Defendants seek summary judgment on Plaintiffs' claims under the ADA, § 504 of the Rehabilitation Act, and § 1983.  Defendant does not seek summary judgment on Count I, but Defendant does oppose Plaintiffs' motion for summary judgment on Count I.

The court held a pretrial conference on May 15, 2015, at which time the parties agreed to mediate, at a minimum, Defendant's obligations to J.S.R. going forward until J.S.R.'s projected graduation in 2017.  Following their mediation, the parties reported that they "resolved all of [Plaintiffs'] non-monetary claims." (Doc. # 59.)   The parties' Memorandum of Mediated Settlement Agreement represents that what remains in contention is Plaintiffs' claim of $10,000.00 in compensatory damages due to J.S.R. for the claims alleged in Counts II, III, and

IV, and their claim for an unspecified amount of attorney's fees and costs.  (Doc. # 59-2, at 1.)

## IV.  DISCUSSION[15]

### A.    Award of Attorney's Fees Under IDEA (Count I)

In their motion for summary judgment, Plaintiffs request a judgment as a matter of law on the issue of their entitlement to attorney's fees under the IDEA (Count I).  Defendant has not moved for judgment as a matter of law on Count I, but it opposes Plaintiffs' motion for summary judgment.

The IDEA provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415 (i)(3)(B).  Consequently, "parents may bring an independent claim for attorney's fees in a district court after their child prevails" in a state administrative hearing.  *Matthew V. ex rel. Craig V. v. DeKalb Cnty. Sch. Sys.*, 244 F. Supp. 2d 1331, 1335 (N.D. Ga. 2003); *see also Robert v. Cobb Cnty. Sch. Dist.*, 279 F. App'x 798, 800 (11th Cir. 2008).

"[T]o succeed on such a claim, [the plaintiff] must satisfy two elements: that there was a dispute between her and the school authority, and that she was the

---

[15] Defendant objects generally that Plaintiffs fail to support their summary judgment arguments with any relevant case law or record citations in their summary judgment brief.  (Doc. # 41, at 12, 15.)  The objection is noted, but Plaintiffs' grounds for summary judgment on Count I are sufficiently stated and Plaintiffs' motion for summary judgment on Counts II, III, and IV is due to be denied.

prevailing party in the dispute." *Doucet v. Chilton Cnty. Bd. of Educ.*, 65 F. Supp. 2d 1249, 1254 (M.D. Ala. 1999).  The IDEA does not define "prevailing party," so federal courts have borrowed from precedents interpreting other federal fee-shifting statutes.   Hence, an IDEA plaintiff is a prevailing party if she "receive[d] at least some relief on the merits of her claim," *id.* at 1256 (citation and alteration omitted), and so long as that relief was afforded in the form of a judgment, consent decree, or similar court-ordered change in the parties' legal relationship, *Robert*, 279 F. App'x at 801.  *See also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001).[16]

Defendant protests that Plaintiffs cite little to no case law in support of their motion for summary judgment on Count I.  Plaintiffs, have however, made clear that they seek fees per the IDEA and have identified the portion of the IDEA under which they claim entitlement to relief.  Further, they have identified the relief J.S.R. was granted on the merits of the due process complaint.

Defendant contrasts the extensive relief sought by J.S.R. in the due process complaint with the actual relief awarded by the hearing officer and argues that Defendant was actually the prevailing party.  Defendant asserts that the relief provided to J.S.R. was on "very limited issues."  (Doc. # 41, at 10.)  Defendants

---

[16] The term "court-ordered" in this opinion or any similar IDEA precedent encompasses relief ordered by a non-judicial, administrative hearing officer.  *See Abraham v. D.C.*, 338 F. Supp. 2d 113, 120 (D.D.C. 2004).

contend that J.S.R. cannot be considered the prevailing party if he only won a "minor, inconsequential victory." (Doc. # 41, at 10 (citing *Canup v. Chipman-Union, Inc.*, 123 F.3d 1440, 1443 (11th Cir. 1997)).) Defendants offer as examples various case precedents where fees were denied to IDEA plaintiffs who achieved very slight success or who enjoyed only a Pyrrhic victory. (*See* Doc. # 41, at 11.)

Yet the relief awarded by the hearing officer cannot be characterized as slight or hollow. Hearing Officer Morton found that J.S.R. had been denied a FAPE for one year, awarded his mother reimbursement for her expense of independently obtaining neuropsychological testing that Defendant should have provided, and required Defendant to pay for at least one year of third-party remedial math education services and counseling for J.S.R. Under the logic of Defendant's argument, Plaintiffs should be penalized now for asking for more due process relief than J.S.R. ultimately received. But that argument fails. The fact that J.S.R. requested more relief than was granted does not render his victory inconsequential. Further, what Hearing Officer Morton awarded was not *de minimis* relief. His ruling satisfies the legal requirement that J.S.R. obtain at least some of the relief sought, by virtue of a ruling that altered his legal relationship with Defendant. *See Buckhannon*, 532 U.S. at 604. The court concludes that Plaintiffs are entitled, as a matter of law, to an award of attorney's fees for the prosecution of the due process complaint for IDEA relief.

23

The only issue remaining is the amount of attorney's fees due to Plaintiffs' counsel.  Plaintiffs allege that as of June 24, 2013, counsel had incurred $100,942 in fees and $4,630 in costs.  (Am. Compl. at ¶ 40; *see also* Docs. # 34-2; 34-3; 35 at 1–13.)  Plaintiffs have requested an opportunity to prove the reasonableness of their fee request.  (Doc. # 26, at 16.)  Plaintiffs will be allowed to update and resubmit their fee request, and Defendant will be given the opportunity to object to the reasonableness of the sum of fees sought.

**B.     Relief Under the ADA and § 504 (Counts II and III)**

### 1.     *Standard for Evaluating ADA and § 504 Claims*

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  The ADA very similarly states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.  42 U.S.C. § 12132.

The ADA contemplates that the same remedies available under the Rehabilitation Act are applicable to ADA Title II disability discrimination claims.

42 U.S.C. § 12133. "The remedial scheme for a non-employment discrimination claim under the Rehab Act . . . is found in Title VI of the Civil Rights Act of 1964." *Taylor v. Altoona Area Sch. Dist.*, 737 F. Supp. 2d 474, 487 (W.D. Pa. 2010) (citing 29 U.S.C. § 794a(a)(2)). Because "[d]iscrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases," "[c]ases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa." *Cash v. Smith*, 231 F.3d 1301, 1305, 1305 n.2 (11th Cir. 2000). It is therefore proper to consider Plaintiffs' discrimination claims under the ADA and § 504 together, applying the same standards.

As stated in the parties' Memorandum of Mediated Settlement Agreement, Plaintiffs seek compensatory damages. "[C]ompensatory damages are precluded in cases of unintentional discrimination, but are permissible on a showing of intentional discrimination." *Wood v. President & Trs. of Spring Hill Coll. in City of Mobile*, 978 F.2d 1214, 1219–20 (11th Cir. 1992) (addressing § 504 claim); *W.C. ex rel. Sue C. v. Cobb Cnty. Sch. Dist.*, 407 F. Supp. 2d 1351, 1363 (N.D. Ga. 2005) (same); *see also J.D.P. v. Cherokee Cnty., Ga. Sch. Dist.*, 735 F. Supp. 2d 1348, 1364 (N.D. Ga. 2010) (extending principle to ADA claims). In the Eleventh Circuit, intentional discrimination claims under § 504 are subject to a standard of deliberate indifference, which requires the plaintiff to prove that "the defendant knew that harm to a federal protected right was substantially likely and that the

defendant failed to act on that likelihood." *Ms. H. v. Montgomery Cnty. Bd. of Educ.*, 784 F. Supp. 2d 1247, 1262 (M.D. Ala. 2011) (Albritton, J.) (quoting *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Cnty., Fla.*, 610 F.3d 588, 604 (11th Cir. 2010)).   The parties' primary dispute is whether Defendant discriminated against J.S.R. because of his disability.   Hence, the focus of the discussion will be on this issue.

### 2.   *Alleged Discrimination*

#### a.   **Plaintiffs' Contentions**

Plaintiffs claim that Defendant violated the ADA by denying J.S.R. "reasonable accommodations" necessary to ensure that J.S.R. was provided the same educational opportunity that Defendant provides for non-disabled students. (Doc. # 26, at 19.)   Plaintiffs do not assert definitively what reasonable accommodations and services should have been provided during J.S.R.'s seventh- and eighth-grade years.[17]   Plaintiffs contend that Defendant may have tried to provide accommodations for J.S.R., but the accommodations "were not developed to help [him]" in particular.  (Doc. # 43, at 5.)

Plaintiffs contend that Defendant violated § 504 by failing to provide J.S.R. with a FAPE, *i.e.*, "regular or special education and related aids and services that

---

[17] Plaintiffs assert that Defendant should *now* provide J.S.R. with "further individualized instruction from the Learning Center and more appropriate counseling."  (Doc. # 26, at 20.)  That demand appears to have been met by Defendant to Plaintiffs' satisfaction at the parties' mediation.  (*See* Doc. # 59-1.)  That demand does not answer the question what reasonable accommodations and services should have been provided to J.S.R. in seventh and eighth grades.

. . . are designed to meet *individual* educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met."  (Doc. # 26, at 22 (citing 34 C.F.R. § 104.33) (emphasis added).)   While Defendant provided some aid or service to J.S.R., Plaintiffs aver that the aids or services were not designed to meet J.S.R.'s individual needs.   (Doc. # 43, at 8.)   Plaintiffs reiterate that Defendant refused to properly evaluate J.S.R. for special education eligibility. "When [Defendant] did provide services" to J.S.R., Plaintiffs claim that "[Defendant] violated *all* the rules and regulations" made applicable by § 504. (Doc. # 26, at 24 (emphasis added).)   In spite of the accusation that Defendant offended all rules, Plaintiffs focus almost entirely on one § 504 infraction:  J.S.R.'s removal from his math class in seventh grade in contravention of § 504's requirement that students be accommodated and supported so as to participate in the general education curriculum.[18]  *See* 34 C.F.R. § 104.34(a).

---

[18] Plaintiffs admit that J.S.R.'s removal from seventh-grade math class could have been technically appropriate if J.S.R. had been under an IDEA IEP, but there was no IEP in place during J.S.R.'s seventh-grade year.  (Doc. # 26, at 25 n.8.)  J.S.R. was under a PEP at the time. Under the § 504 regulations, a school must try to educate handicapped and nonhandicapped students in the same setting "to the maximum extent appropriate to the needs of the handicapped person" by using "supplementary aids and services."  34 C.F.R. § 104.34(a).

Defendant accuses Plaintiffs of "continually switch[ing] gears," alleging that removal from grade-level math classes amounted to discrimination while demanding removal from grade-level math instruction.  (Doc. # 41, at 19.)  Defendant ignores that J.S.R. should not have been treated as a special education student without and prior to his official diagnosis and designation for special education.

In *Ms. H.*, the court found that there is no private right of action for a violation of a regulation promulgated in support of § 504, but reasoned that a school district's ignorance of

Plaintiffs maintain that Defendant acted in bad faith and with reckless disregard for J.S.R.'s rights inasmuch as Defendant's personnel did not know Defendant's obligations to disabled students under federal law.  Plaintiffs assert that Defendant's § 504 coordinator and special education director did not know that a student could be identified for special education services apart from identification by the discrepancy model and did not know that a special education student's curriculum could be modified.  (Doc. # 40, at 12–13.)  Additionally, during the pretrial conference, Plaintiffs represented that the special education coordinator did not know that the law required that J.S.R. continue to receive the same services after the due process complaint was filed in eighth grade, and that Defendant violated this requirement by changing J.S.R.'s counselor.[19]  Plaintiffs claim these failures to know and follow special education law constituted "gross misjudgment" on the part of Defendant's employees.

### b.   Defendant's Contentions

With respect to Plaintiffs' ADA discrimination claim, Defendant asserts that accommodations *were* made for J.S.R., and that the accommodations that were

---

"the regulations that the Department of Education has ordered it to follow to ensure proper treatment of disabled students . . . may show that the school district is deliberately indifferent to the needs of disabled students."  784 F. Supp. 2d at 1265.  The court will give the same weight to any evidence of Defendant's violation of a Department of Education regulation in this case.

[19] During the pretrial conference, Plaintiffs' lawyer referred to this requirement as "stay put."  There is no mention of a violation of "stay put" or any reference to a change of counselor in Plaintiffs' briefing.

implemented on J.S.R.'s behalf are the same as the accommodation suggested by J.S.R.'s neuropsychologist, Dr. Passler – a fact that Plaintiffs dispute.  (Doc. # 41, at 13.)    Defendant says it "implemented . . . environmental, organizational, assignment, curriculum, presentation, and evaluational accommodations" for J.S.R., as well as recommendations from J.S.R.'s counselor.  (Doc. # 40, at 30–31 (citing J.S.R.'s PEP for the 2009–2010 and 2010–2011 academic years (Doc. # 27-9) and due process hearing testimony of two of J.S.R.'s teachers (Docs. # 27-10, 27-11).)  Defendant argues that Ms. Childs expected Defendant to ensure J.S.R.'s optimal academic success when she should have only expected reasonable accommodations for him.

Assuming *arguendo* that it failed to provide accommodations and services as alleged, Defendant argues that Plaintiffs have no evidence of causation that the missing accommodations and services contributed to or caused J.S.R.'s academic failure.  (Doc. # 41, at 15 (citing *Brown v. Dist. 299– Chicago Pub. Sch.*, 762 F. Supp. 2d 1076, 1085 (N.D. Ill. 2010)).)   In *Brown*, the court granted the defendant's motion for summary judgment, refusing the plaintiffs' request to infer that, if the school had fully complied with an IEP, then the plaintiff would have passed his classes.  The court explained that the plaintiff failed to present evidence of causation, such as the plaintiff's performance with the assistance of a special education teacher as compared to his performance without assistance, or

performance on tests where accommodations were provided versus performance on tests without accommodations.  *Id.*  Defendant contends that Plaintiffs likewise fail to present evidence to support their claim that Defendant was the cause of J.S.R.'s academic failure.

With respect to Plaintiffs' § 504 discrimination claim, Defendant suggests again that causation is lacking, and goes further by arguing that its evidence at the due process hearing credibly suggested that J.S.R.'s poor academic performance was due in part to J.S.R.'s lack of effort and his passive approach to learning that has been fostered by his family.  (Doc. # 41, at 17–18 (citing *Schnelting v. St. Clair R-XIII Sch. Dist.*, No. 4:10-CV-01240-JAR, 2011 WL 5913483, at *10 (E.D. Mo. Nov. 28, 2011)).)

Lastly, Defendant argues that Plaintiffs cannot prove the requisite element of intentional discrimination to support a claim for compensatory damages under either the ADA or § 504.[20]   Section 504 claims arising in the context of public education are sometimes resolved at summary judgment on the intentional discrimination element because a plaintiff must show "something more than an

---

[20] The court pauses to note what has not been disputed in the summary judgment briefing. Defendant has not denied that J.S.R. is (1) a person with a disability (2) who is otherwise qualified to participate in (3) a program receiving federal financial assistance.  *See Ms. H*, 784 F. Supp. 2d at 1261 (enumerating the elements of a § 504 claim).  Similarly, Defendant has not contested that it is a public entity or that J.S.R. is a "qualified individual with a disability," as required to support a claim under the ADA.  *See* 42 U.S.C. § 12132.  Defendant disputes that it has denied benefits or services to J.S.R. or otherwise subjected J.S.R. to discrimination because of his disability.

IDEA violation for failure to provide a FAPE." *W.C.*, 407 F. Supp. 2d at 1363–64; *Ms. H.*, 784 F. Supp. 2d at 1262 ("[Section] 504 claims necessarily require more than IDEA violations."). The plaintiff "must . . . demonstrate some bad faith or gross misjudgment by the school or that he was discriminated against solely because of his disability." *W.C.*, 407 F. Supp. 2d at 1364. Courts have thus said that a school district's "mere negligence" is insufficient to support a claim for compensatory damages. *D.A. v. Meridian Joint Sch. Dist. No. 2*, 289 F.R.D. 614, 622 (D. Idaho 2013) (citing *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)); *see also Monahan v. Nebraksa.*, 687 F.2d 1164, 1170 (8th Cir. 1982) ("We do not read [§] 504 as creating general tort liability for educational malpractice."). If the school officials "have exercised professional judgment in such a way as not to depart grossly from accepted standards among educational professionals, the school system is not liable under § 504" or the ADA. *Ms. H.*, 784 F. Supp. 2d at 1263 (quoting *Monahan*, 687 F.2d at 1171).

Defendant argues that Plaintiffs' allegations that it acted with deliberate indifference or bad faith toward J.S.R. are conclusory and unsubstantiated by the evidence. Defendant asserts that Plaintiffs can show, at most, that Defendant's agents, in the exercise of their professional judgment, made "faulty or incorrect . . . evaluations and educational placements," but that such mistakes are legally insufficient to constitute intentional discrimination. (Doc. # 40, at 48.)

### 3.   *Findings*

Proving a school district's deliberate indifference, bad faith, or gross misjudgment is a high standard that can be difficult for a plaintiff to meet, but the court may not weigh the evidence at summary judgment.[21]   Consequently, district courts have allowed special education cases arising under § 504 and/or the ADA to proceed to trial where the court could not decide the question of intentional discrimination as a matter of law.

For example, in *D.A.*, the court found the plaintiff's evidence that the defendant provided inadequate testing to a student was sufficient reason to deny the defendant's motion for summary judgment, notwithstanding the defendant's evidence of its efforts to provide accommodations to the plaintiff.   289 F.R.D. at 623.   Similarly, in *Ms. H.*, the plaintiff presented probative evidence that the defendant "simply ignored [the student] by failing to conduct tests or assessments, and by failing to significantly update [the student's] § 504 plans despite [the student's] poor grades."   784 F. Supp. 2d at 1268.   And in *BD v. DeBuono*, 130 F. Supp. 2d 401, 439 (S.D.N.Y. 2000), the court denied a school district's motion for summary judgment where plaintiffs showed that educators knew that the

---

[21]   "In practice, cross motions for summary judgment may be probative of the nonexistence of a factual dispute, but this procedural posture does not automatically empower the court to dispense with the determination whether questions of material fact exist."   *Ga. State Conference of NAACP v. Fayette Cnty. Bd. of Comm'rs*, 775 F.3d 1336, 1345 (11th Cir. 2015) (internal citation, alteration, and quotations omitted).   In this case, the cross motions are *not* probative of the nonexistence of a factual dispute.

quantity of therapy provided to students was inadequate but nonetheless persisted in providing that level of therapy.

In view of the evidence and in keeping with the obligation to view the evidence in the light most favorable to the non-moving party, the court concludes that a jury should decide whether Defendant discriminated against J.S.R. because of his disability.   Additionally, the court finds that Defendant's lack of causation defense should also be presented to a jury.   The parties' cross-motions for summary judgment on Plaintiffs' ADA and § 504 discrimination claims (Counts II and III) are therefore due to be denied, with one exception discussed below.

### 4.   *Baseball Discrimination and Retaliation*

Plaintiffs assert that Defendant discriminated against J.S.R. in violation of § 504 and the ADA by excluding J.S.R. from participation in extracurricular sports.   Plaintiffs posit that, if J.S.R.'s academic needs had been addressed properly by Defendant, his grades would not have suffered; ergo, he would have been eligible to play sports during the eighth grade.

Defendant contends that J.S.R. was not discriminated against on the basis of his disability.   Defendant contends that it provided J.S.R. an equal opportunity to participate because:  (1) Defendant fairly applied a system-wide rule that prevented J.S.R. from trying out for baseball in seventh grade while he was suspended from school for bringing brass knuckles to school; and (2) Defendant offered reasonable

accommodations to assist J.S.R. in achieving the passing grades required by the Alabama High School Athletic Association to be eligible to play sports in eighth grade. (Doc. # 40, at 39–40; *see also* Doc. # 40, at 27 (citing 34 C.F.R. § 104.37, which requires a school to "provide . . . extracurricular services and activities in such manner as is necessary to afford handicapped students *an equal opportunity for participation* in such services and activities") (emphasis added)).) The court notes that Defendant's position is consistent with Hearing Officer Morton's findings of no discrimination during the IDEA due process proceedings, (*see* Admin. Decision, at 44–45), and Plaintiffs have not appealed that decision.

Plaintiffs also assert that Defendant violated the anti-retaliation provisions of § 504 by not permitting J.S.R. to play baseball in tenth grade, by not providing unspecified counseling, and by pursuing truancy issues in juvenile court for absences that were due to his disability and excused by a doctor. As discussed in a separate memorandum opinion and order on Defendant's motion to strike, these factual predicates for a retaliation claim have not been administratively exhausted and were not pleaded in Plaintiffs' Amended Complaint.

For these reasons, Defendants are entitled to summary judgment on the ADA and § 504 discrimination claims relating to baseball and on any retaliation claim relating to baseball.

**C.      Relief Under § 1983 (Count IV)**

Defendant contends that it is entitled to summary judgment on Plaintiffs' § 1983 claim that Defendant violated J.S.R.'s constitutional rights to substantive and procedural due process and equal protection.  Defendant argues simply that "[§] 1983 actions for denial of rights conferred by the IDEA are barred because the IDEA's comprehensive enforcement scheme provides the sole remedy for statutory violations."  *K.A. ex rel. F.A. v. Fulton Cnty. Sch. Dist.*, 741 F.3d 1195, 1210 (11th Cir. 2013).  Defendant's motion is well-taken to the extent that Plaintiffs attempt to raise constitutional claims rooted in Defendant's failure to comply with the requirements of the IDEA and to the extent that Plaintiffs are claiming that J.S.R. was denied equal protection when he did not receive the FAPE that Defendant provided to non-disabled students.  *See id.*; *see also Smith v. Robinson*, 468 U.S. 992, 1010 (1984), *superseded in part by statute*, 20 U.S.C. § 1415(e)(4) (holding that the EHA was the exclusive route by which the plaintiffs could assert an equal protection claim concerning the right to a FAPE).

However, *K.A.* did not hold that the constitutional claims can never accompany IDEA claims.  Rather, the court qualified its holding in *K.A.* as follows:  "Were there some right at issue *conferred by the Constitution or other federal laws* and not by the IDEA, we would be presented with a different question."  741 F.3d at 1210 (emphasis added).  For example, in *Manecke v.*

35

*School Board of Pinellas County, Fla.*, 762 F.2d 912 (11th Cir. 1985), the Eleventh Circuit held that an action could be brought under § 1983 where a school board deprived a disabled child of her right to due process by effectively denying her access to the impartial due process hearing required by the IDEA. *Id.* at 918–21.[22]

Ms. Childs does not deny that when she finally requested a due process hearing, she received one. She appears to be alleging instead that Defendant's mishandling of J.S.R.'s special education situation and its provision of inaccurate information about its ability to serve and accommodate J.S.R. caused her to delay her formal request for due process proceedings. (*See* Am. Compl. at ¶ 56.) It is still not clear from Plaintiffs' submissions how those facts constitute a procedural due process deprivation.

At the pretrial conference, the court pressed Plaintiffs' counsel for an explanation of the nature of the substantive and procedural due process claims. Counsel responded that J.S.R. was not afforded a complete and full due process hearing on the ADA and § 504 claims because the hearing officer declined to hear those claims. There appears to be no question that the hearing officer was correct that he lacked jurisdiction over any claim arising under the ADA or § 504. Even if the hearing officer should have entertained the claims in 2013, Plaintiff has not

---

[22] However, "[t]he [*Manecke*] court explicitly cautioned that the holding was narrowly limited to the facts of that case and should not be broadly construed to hold that § 1983 may be employed whenever a procedural deprivation occurs in the context of [what is now] known as the IDEA." *Sch. Bd. of Manatee Cnty., Fla. v. L.H. ex rel. D.H.*, 666 F. Supp. 2d 1285, 1296 (M.D. Fla. 2009).

explained why Defendant, a co-participant in the proceedings, should be responsible for the alleged error of a state-appointed hearing officer.

Plaintiffs' counsel further explained at the pretrial conference that J.S.R. was denied his substantive due process right to participate in his education and in school sports. But Plaintiffs have omitted – and perhaps just take for granted – any legal explanation of the basis of J.S.R.'s substantive due process rights to participate in either his education or in baseball.

In view of the incompleteness of the parties' arguments concerning the § 1983 claims, the court declines to grant either party's motion for summary judgment with respect to Plaintiffs' due process claims. Defendant has not met its burden of showing why it is entitled to judgment as a matter of law. Likewise, Plaintiffs also have failed to provide the court with a legal basis to support their motion for summary judgment on Count IV. The cross-motions for summary judgment are therefore due to be denied with respect to Plaintiffs' substantive and procedural due process claims. However, Defendant's motion for summary judgment on Count IV is due to be granted on the basis of the Eleventh Circuit's holding in *K.A.*, which advises that there can be no equal protection claim for denial of a FAPE or any other violation of the IDEA that is redressable by the IDEA.

## V. CONCLUSION

In accordance with the foregoing discussion, it is ORDERED that:

(1)    Plaintiffs' motion for summary judgment is GRANTED IN PART and DENIED IN PART.  Plaintiffs' motion is GRANTED with respect to Count I.  It is DENIED with respect to Counts II, III, and IV.

(2)    Defendant's motion for summary judgment is GRANTED IN PART and DENIED IN PART.  Defendant's motion is GRANTED with respect to the equal protection claim asserted in Count IV.  Defendant's motion is GRANTED with respect to any ADA or § 504 discrimination or retaliation claim arising from J.S.R.'s exclusion from playing baseball.  Defendant's motion is DENIED with respect to Counts I, II, III, and the remainder of Count IV.

(3)    Defendant's alternative motion for judgment on the pleadings is DENIED.

On or before **October 26, 2015**, Plaintiffs shall submit their request for attorney's fees owed for the administrative due process hearing.  Defendant may file any objections to Plaintiffs' fee request on or before **November 9, 2015**.  The parties shall consider the IDEA's statutory standards for fee awards and related costs.  *See* 20 U.S.C. § 1415(i)(3)(C)–(G).

DONE this 28th day of September, 2015.

_____
/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE