IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| J.S.R., a minor, by his Mother, Susan Tarter Childs, as his Next Friend, and SUSAN TARTER CHILDS, | ) | |
| Plaintiffs, | ) | |
| v. | ) | CASE NO. 1:13-CV-582-WKW [WO] |
| DALE COUNTY BOARD OF EDUCATION, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Plaintiffs' motion for attorneys' fees. (Doc. # 69.) Defendant filed a response (Doc. # 70), and Plaintiffs filed a reply (Doc. # 75). Upon consideration of the parties' arguments, the evidence, the administrative record, and the relevant law, the motion is due to be granted. Plaintiffs are awarded fees in the amount of $103,965 and costs in the amount of $874.69.

## I. JURISDICTION AND VENUE

Because Plaintiffs are prevailing parties under the Individuals with Disabilities Education Act ("IDEA"), they are eligible to receive attorneys' fees. The court exercises jurisdiction pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(3). The parties do not contest venue or personal jurisdiction.

## II. LEGAL STANDARD

The district court may, in its discretion, award attorneys' fees to a prevailing party in an IDEA proceeding. 20 U.S.C. § 1415(i)(3). That discretion is not completely unfettered. The statute provides that any fees awarded thereunder must be based on the prevailing rates in the community where the action arose. *Id.* It further provides that fees may not be awarded for services performed subsequent to the time of a written offer of settlement if, among other things, the court finds that the relief actually obtained is not more favorable than the offer of settlement. *Id.* Fees may be awarded for services subsequent to the offer of settlement, however, where the parent was justified in rejecting the settlement offer. *Id.* Finally, the statute provides for certain bases on which reductions may be made to the amount of fees awarded. *Id.*

To determine the appropriate award amount, the court begins by multiplying a reasonable hourly rate by the number of hours reasonably expended. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).[1] This approach, known as the lodestar method, results in an amount that presumptively reflects all the factors the court should consider in making a determination of reasonableness. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Johnson v. Ga.*

[1] The legislative history accompanying the IDEA attorneys' fee provision indicates that it is to be interpreted in a manner consistent with the framework set forth in *Hensley*. *See* H.R. Rep. No. 105-95, at 105 ("[T]he Committee believes the amount of any award of attorneys' fees to a prevailing party under part B shall be determined in accordance with the law established by the Supreme Court in Hensley v. Eckerhart, 461 U.S. 424, 440 (1983) and its progeny.").

*Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), in which the old Fifth Circuit articulated the twelve reasonableness factors). The moving party bears the burden of establishing the appropriate hourly rates and compensable hours with sufficient evidence. *Norman*, 336 F.2d at 1303.

Under the attorneys' fee provision of the IDEA, the hourly rate must be based on prevailing rates in the community in which the action arose. 20 U.S.C. § 1415(i)(3). The starting point for determining a reasonable hourly rate is the regular rate at which the attorney bills her clients. *See Dillard v. City of Greensboro*, 213 F.3d 1347, 1354 (11th Cir. 2000) (noting that what the attorney charges clients is "powerful, and perhaps the best" evidence of the market rate); *Knight v. Alabama*, 824 F. Supp. 1022, 1028 (N.D. Ala. 1993). Also to be considered are the rates charged in cases of similar complexity and requiring similar levels of skill. *Norman*, 836 F.2d at 1300. The experience, skill, and reputation of the attorneys are also relevant. *Knight*, 824 F. Supp. at 1028. The court itself is an expert in the matter of hourly rates, and thus may draw upon its own knowledge and experience. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994).

To ascertain the number of compensable hours, the court must determine which hours were necessary to secure the result obtained from the proceedings. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546,

561 (1986). To that end, any hours that are "excessive, redundant, or otherwise unnecessary" must be excluded. *Hensley*, 461 U.S. at 434. If any of the hours expended are attributable to discrete and unsuccessful claims, they should be excluded as well. *Norman*, 836 F.2d at 1302.

After determining the lodestar fee, the court must determine whether the fee should be adjusted upward or downward. Under the IDEA, no "bonus or multiplier" may be assessed in calculating the total fee award. 20 U.S.C. § 1415(i)(3)(C). Whether the fee award should be adjusted is to be determined based on the factors laid out in *Johnson*, 488 F.2d at 717–19. The lodestar amount, however, is presumed to account for the relevant factors. *Delaware Valley*, 478 U.S. at 566. There is a strong presumption that the lodestar amount constitutes a reasonable award, and it should only be adjusted in rare cases. *Id.*

## III. BACKGROUND

The circumstances surrounding this case were addressed at length in a previous opinion. (*See* Doc. # 64.) A brief recitation of the facts and procedural history is appropriate for the purposes of this attorneys' fees motion.

J.S.R. has been enrolled in Dale County Schools since he was in the first grade. When J.S.R. was in the seventh grade, his mother, Susan Childs ("Childs"), took him for a neuropsychological evaluation. Dr. Passler ("Passler"), the neuropsychologist, determined that J.S.R. has a learning disability. Childs filed a

due process complaint with the Alabama Department of Education. Hearing officer Steve P. Morton ("Morton") conducted a thorough hearing on the due process complaint. Ultimately, he determined the Dale County Board of Education denied J.S.R. a free appropriate public education as prescribed under the IDEA. *See* 42 U.S.C. § 1400, *et seq*. Morton ordered substantial relief for J.S.R.

Plaintiff brought the instant action to recover legal fees and costs incurred during the administrative proceedings and to resolve claims not within the jurisdiction of the hearing officer. Defendant Dale County Board of Education filed a motion for summary judgment, which was granted in part and denied in part. (*See* Doc. # 65-1.) Relevant to this motion is the court's finding that Plaintiffs are prevailing parties within the meaning of the IDEA's attorneys' fee provision. (Doc. # 65-1, at 23.) *See* 20 U.S.C. § 1415(i)(3).

Plaintiffs now petition for attorneys' fees totaling $113,597.50. This figure is derived from the hours expended and the proposed rates for two attorneys: Bobbie S. Crook ("Crook"), and Michael P. Lasseter ("Lasseter"). Plaintiffs also seek to recover expenses in the amount of $874.69.

## IV. DISCUSSION

It has already been determined that Plaintiffs are prevailing parties under the IDEA. (Doc. # 65-1, at 23.) Accordingly, they are eligible to receive attorneys' fees. 20 U.S.C. § 1415(i)(3). It must now be determined whether they are entitled

to the full amount requested. First, the reasonable hourly rate applicable to this case will be established. Second, the reasonable number of compensable hours will be determined. Third, potential reductions in the lodestar amount will be considered. Finally, a reasonable amount of expenses will be awarded.

## A. Reasonable Hourly Rate

In their motion, Plaintiffs request that they be awarded fees at the rate of $275 per hour for Crook and $200 per hour for Lasseter. The relevant community will first be determined. In light of the *Johnson* factors applied to all the relevant circumstances, the reasonable rates at which Plaintiffs' attorneys should be compensated are as follows: $250 per hour for Crook and $200 per hour for Lasseter.

### 1. *The Relevant Legal Community*

The parties agree that the relevant legal community for this case is Dothan, Alabama. (Doc. # 69, at 9; Doc. # 70, at 9.) Though Dothan is located in a county adjoining Dale County, Crook represents that it is difficult to determine prevailing rates in Dale County because there are no attorneys who regularly litigate these types of cases in the Ozark area. (Doc. # 69, at 10.) Plaintiffs filed this case in the Southern Division, the situs of which is Dothan. Accordingly, the reasonable rate will be determined based on fees customarily charged in the Middle District of

Alabama and, more specifically, in the community of Dothan, Alabama. *See Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994).

**2. *Consideration of the* Johnson *Factors***

The reasonableness of the overall fee ultimately depends on the consideration of the twelve factors set out in *Johnson*. 488 F.2d at 717–19. The factors include (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id.* While the Johnson factors are not conclusive, *see Delaware Valley*, 478 U.S. at 564–66, they are sufficient to resolve this dispute.

**a. Factors One through Four**

The first four factors will be addressed together. These include the time and labor required, the novelty and difficulty of the questions, the requisite skill to perform the legal service properly, and the preclusion of other employment. In support of their motion, Plaintiffs submit the affidavits of Deborah Mattison

("Mattison") (Doc. # 69-2) and James Sears ("Sears") (Doc. # 69-3). Both Mattison and Sears are Alabama attorneys who specialize in special education litigation. As these affiants noted, cases such as this one require some specialized knowledge of special education litigation. (Docs. # 69-2 and 69-3.) *See Doucet ex rel. Doucet v. Chilton Cty. Bd. of Educ.*, 65 F. Supp. 2d 1249, 1261 (M.D. Ala. 1999). The hearing officer agreed to resolve three robust issues, each involving a review of J.S.R.'s educational record and the interpretation of federal law. (Admin. Decision, Doc. # 27-1.) The hearing officer based his decision on six days of testimony from thirteen witnesses. (Admin. Decision, Doc. # 27-1, at 4.) The parties submitted seventy-two exhibits. (Admin. Decision, Doc. # 27-1, at 4.)

The attorney representing a child in an IDEA proceeding must understand the child's disability and the child's rights under the statute. (Mattison Aff., Doc. # 69-2, at 4.) Counsel for the child must also understand how to navigate the IDEA's idiosyncratic due process procedures. (Mattison Aff., Doc. # 69-2, at 4.) Plaintiffs' counsel in this case represents that the demands of this case precluded acceptance of any other employment. (Doc. # 69, at 17.)

**b. Factors Five and Twelve**

Factors five and twelve will be addressed together. These are the customary fee and awards in similar cases. The hourly amount Crook and Lasseter normally charge their clients provides a starting point for determining a reasonable rate. *See*

*Dillard*, 213 F.3d at 1354. Crook represented that she regularly bills her clients at the rate of $275 per hour. She also represented that she "would have raised her hourly rate to be more in line with other attorneys with [her] experience and expertise in litigating education cases, had [she] not decided to retire." (Doc. # 69, at 10.) Lasseter normally charges between $200 and $300, depending on the nature of the case. (Doc. # 69, at 10.) Because he lacks experience in education litigation, Lasseter suggests billing at the lower end of his range for this case. (Doc. # 69, at 11.) These regular rates provide a starting point, but they do not resolve the issue.

Mattison avers that the requested rates are reasonable in light of the nature of this case, but she does not state whether this rate was aligned with those normally charged in the Dothan area. (Mattison Aff., Doc. # 69-2, at 5.) Sears does state that these rates were not excessive compared to the rates charged by other civil rights attorneys in the "legal community." (Sears Aff., Doc. # 69-3, at 2.) He states that he charges $350 per hour, but he does not indicate whether he practices in the Dothan area. (Doc. # 69-3, at 2.) Both Mattison and Sears speak to the skill required in complex IDEA cases, so their testimony is not entirely unsatisfactory. But because neither affidavit addresses the reasonable rates charged by attorneys working in the Dothan area, this evidence does little to guide the court in determining the reasonable hourly rate. *See Norman*, 836 F.3d at 1299

("[S]atisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits.").

To show that the proposed rates fall within the range of rates normally charged in the relevant community, Crook submits evidence of fees awarded in other civil rights cases throughout the state. She first refers to *Knight*, a 1993 case in which the Northern District of Alabama made findings as to the general market rates for attorneys in the Birmingham area. 824 F. Supp. at 1032. Crook includes the following purported quotation from that case: "The general market rates for attorneys with over 20 years of experience practicing federal complex litigation in Birmingham is from approximately $300.00 to $475.00 per hour, with the great majority of rates from $350 to $375 per hour." (Doc. # 69, at 9.) These are not the figures that actually appear in the text of that case. The *Knight* court found the range to be from "$150.00 to $300.00 per hour, with the great majority of rates from $150.00 to $225.00." 824 F. Supp. at 1032. Regardless of what the court actually found in *Knight*, the range of rates charged in the Birmingham area in 1993 is not particularly helpful in this case. Crook also cites cases establishing the ranges of rates in other areas throughout the state, but not in Dothan. The range of rates in other areas throughout the district informs the ultimate determination as to the reasonable rate for this case.

In response to Crook's arguments, Defendant suggests rates of $200 per hour for Crook and $150 per hour for Lasseter. These rates derive from *Copely v. Superior Logistics Alternative, Inc.*, in which Crook served as counsel in an employment discrimination action under Title VII. No. 10-cv-0009, 2011 WL 1165476 (M.D. Ala. Mar. 30, 2011). In *Copely*, however, the plaintiffs obtained a default judgment, minimizing the complexity of the work required in the case. *Id.* at *1. The rates charged in the Dothan area may have changed in the more than four years since that case was resolved. Though *Copely* sheds some light on the prevailing rates in Dothan, it does not establish the range of rates that the current Dothan market will support.

In conjunction with their reply, Plaintiffs also submitted the affidavit of Dusty Harrell ("Harrell"). (Doc. # 75-1.) Harrell has practiced law in the Dothan area since 1999, and he worked closely with Crook as a paralegal before his admission to the bar. He is of the opinion that Lasster's fee of $200 per hour is a reasonable rate for an attorney of his skill and experience practicing in the Dothan area. Harrell also avers that the reasonable rate for an attorney of Crook's skill and experience practicing in the Dothan area ranges from $275 to $350, if not more. Matthew C. Lamere, who also has extensive experience practicing in the Dothan area, avers that attorneys in this area with Crook's credentials regularly charge $300 to $350 per hour. (Lamere Aff., Doc. # 75-2, at 3.) He also states that

attorneys in the area with Lasseter's experience regularly charge between $200 and $300 per hour. (Lamere Aff., Doc. # 75-2, at 3.)

**c. Whether the Fee is Fixed or Contingent**

Plaintiffs' counsel represents that a contingent fee arrangement was necessary in this case. (Doc. # 69, at 11.) Counsel covered expenses, knowing that reimbursement might not be possible. (Doc. # 69, at 11.) Counsel further represents that the delay in payment resulting from these contingent cases, almost two and a half years here,[2] presents a hardship for the attorneys who take them. (Doc. # 69, at 15.) The hourly rate should account for the risks and difficulties arising from the circumstances.

**d. Time Limitations**

The parties have not presented evidence indicating that time limitations imposed by the client or the circumstances is a relevant consideration in this case.

**e. The Amount Involved and the Results Obtained**

As prevailing parties in the IDEA proceeding, Plaintiffs received substantial relief. The hearing officer determined that Defendants should reimburse Plaintiffs for the cost of neuropsychological testing, and that Defendants should cover the cost of remedial educational services and counseling for J.S.R. (Admin. Decision,

[2] This action commenced in August of 2013. (Doc. # 1.) Plaintiffs filed the initial administrative due process complaint, however, in October of 2012.

Doc. # 27-1, at 51–52.) In Mattison's opinion, this was an "excellent" result. (Mattison Aff., Doc. # 69-2, at 5.)

In response, Defendant argues that Plaintiffs' counsel garnered only limited success for their clients. It is true that Plaintiffs did not receive all the relief they requested. (*See* Doc. # 70, at 19.) But Plaintiffs should not be penalized for fully exhausting administrative remedies in contemplation of potential judicial review. (*See* Doc. # 75, at 18.) To the extent that time should be excluded for unsuccessful matters, those issues will be addressed in Part IV.B, *infra*.

**f. The Experience, Reputation, and Ability of the Attorneys**

In support of the requested award, Crook documents her experience litigating cases like the one at bar. She has been practicing law for twenty-eight years. She has been engaged in civil rights litigation for approximately twenty-three years, and now makes that area the primary focus of her practice. (Doc. # 69, at 18.) She represents that she is the only attorney in the Dothan area who regularly advocates on behalf of children and their parents in IDEA disputes. (Doc. # 69, at 18.) She also has written and spoken to parent groups and educational professionals on issues in education law. (Doc. # 69, at 18.) Crook generally bills civil litigation clients at the rate of $275 per hour. (Doc. # 69, at 19.)

Lasseter, in comparison, has been practicing law for a shorter period. He obtained his license in 2008, and thus has more than seven years of experience. (Doc. # 69, at 19–20.) He has not been extensively engaged in civil rights litigation. (Doc. # 69, at 20.) He submits a rate at the low end of his normal hourly range to account for his limited experience in this area of the law. (Doc. # 20.)

**g. The Undesirability of the Case**

At least two features of civil rights litigation contribute to its undesirable station in the minds of legal practitioners. First, plaintiffs in these cases tend to be financially unable to cover the costs of the litigation. Counsel for the plaintiff, usually operating on a contingency fee basis, runs the risk of recovering nothing in the event of an unfavorable result in the case. Second, when counsel does recover a fee in the case, payment is delayed as issues of attorneys' fees are resolved. The undesirable nature of these cases should be reflected in the attorneys' fee award.

**h. The Nature and Length of the Professional Relationship with the Client**

Crook and Lasseter represent that their relationship with Plaintiffs is limited to their representation in this case. There is no indication whether counsel anticipates any future professional engagements from these clients.

### 3. *Determination as to the Reasonable Hourly Rate*

Upon consideration of all the relevant factors, and based upon the experience of the court in these matters, the reasonable rates at which counsel are to be compensated are as follows: Crook is to be compensated at the rate of $250 per hour; Lasseter is to be compensated at the rate of $200 per hour.

## B. <u>Reasonable Number of Compensable Hours</u>

The second component of the lodestar calculus is the number of compensable hours. Plaintiffs' attorneys submit that they are entitled to compensation for a total of 432.5 hours. 361.3 of these are attributed to Crook, and 71.2 are attributed to Lasseter. The relevant issues will be considered in the following order: the role of Defendant's offer of judgment; redundancies in the submitted hours; vagueness in Plaintiffs' time entries; clerical work; and limited success.

### 1. *Offer of Judgment*

A parent's unjustified rejection of an offer of settlement may truncate the number of compensable hours. Under the IDEA, the prevailing party is not entitled to attorneys' fees for services performed after a written offer of settlement where (1) the offer was made more than ten days before the administrative proceeding begins, (2) the offer is not accepted within ten days, and (3) the court or the hearing officer determines that the relief ultimately obtained by the parent is

not more favorable than the relief offered. 20 U.S.C. § 1415(i)(3)(D)(i). Where the parent was "substantially justified" in rejecting the offer of settlement, however, she is entitled to fees for services performed thereafter. 20 U.S.C. § 1415(i)(3)(E).

On December 27, 2012, Defendant made a written offer of settlement to Plaintiffs. (Offer of Judgment, Doc. # 70-3.)[3] Crook responded the same day with an email rejecting the offer. (Email, Doc. # 70-4.) Because the administrative hearing began on January 10, 2013, Defendant made the offer more than ten days before the beginning of the hearing as prescribed in 20 U.S.C. § 1415(i)(3)(D)(i). Plaintiffs' rejection of the offer, however, does not affect the number of compensable hours.

Plaintiffs were justified in rejecting Defendant's offer of judgment.[4] The offer provided that Defendant would evaluate J.S.R. to determine whether he qualified for special education services. (Offer of Judgment, Doc. # 70-3, at 2.) At

[3] In its motion to strike (Doc. # 78), Defendant contends that portions of the evidence on which Plaintiff relies are inadmissible under Rules 408 and 403 of the Federal Rules of Evidence. Specifically, Defendant moves to strike evidence pertaining to previous settlement offers in this case, correspondence regarding settlement offers in this case, and settlements in unrelated cases.

Rule 408 only prohibits consideration of evidence of settlement negotiations where it is offered "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). Only evidence that comports with the Federal Rules of Evidence will be considered. (*See* Doc. # 80.)

[4] Plaintiffs offer several justifications for rejecting the offer of judgment. (Doc. # 75, at 9–12.) The sole fact that Defendant did not offer outright to provide special education services suffices to render Plaintiffs' rejection reasonable. Whether the remaining justifications are sufficient will not be decided.

the time Defendant made this offer of judgment, Childs already had made repeated requests for evaluation to no avail. (Admin. Decision, Doc. # 27-1, at 42 ("[T]he parent's request[s] were more or less ignored, leaving her to take action on her own.").) Passler concluded that J.S.R. in fact did have a learning disability, and as a result J.S.R. was entitled to special education services. (*See* Passler Report, Doc. # 35-1.) An offer merely indicating Defendant would evaluate J.S.R. to determine whether he was entitled to services was not an offer that a parent in Child's position would be expected to accept. She had reason to believe, based on Passler's report, that J.S.R. assuredly was entitled to special education services. Ultimately, the hearing officer determined, based on Passler's findings, that J.S.R. would have been entitled to special education services as of November 29, 2011. (Admin. Decision, Doc. # 35, at 35.) For this reason, the relief obtained at the administrative proceeding was more favorable than the relief Defendant offered.

Plaintiffs were justified in rejecting the offer of judgment. Because they were so justified, 20 U.S.C. § 1415(i)(3)(D)(i) does not preclude their recovery of attorneys' fees for services rendered after Defendant made the offer. 20 U.S.C. § 1415(i)(3)(E).

**2. *Excessive, Redundant, or Unnecessary Hours***

Defendant argues that Plaintiffs' time submissions include hours that are excessive, redundant, or unnecessary. (Doc. # 70, at 26.) If the fee application

includes hours that do not reflect sound "billing judgment," the court must ensure that they are not included in the award. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). The party opposing the fee application, however, bears the burden of making "reasonably precise" objections, offering proof to support them. *Id.*

First, Defendant contends that the hours Crook spent drafting pleadings and motions are excessive. The due process complaint, court complaint, and fee petition, Defendant argues, are "strikingly similar" to filings Crook has made in connection with other cases. (Doc. # 70, at 30.) Defendant relies on *C.W. v. Bd. of Educ. of Chicago*, a case in which the Northern District of Illinois reduced the number of compensable hours attributed to drafting a complaint. No. 11-CV-2349, 2012 WL 355360, at *10 (N.D. Ill. Feb. 1, 2012). Though the court noted that the complaint in that case was similar to ones previously filed by one of the attorneys involved, it also based its reasoning on the fact that three attorneys billed their time for drafting the complaint. *Id.* The court reduced the hours from approximately twenty-five to approximately twelve, finding the latter number of hours to be reasonable.

Here, Crook only attributed 10.6 hours to drafting the due process complaint. (Doc. # 69, at 4.) She only submitted 6.4 hours relating to the drafting of the fee petition. The time that Crook attributed to drafting complaints and

motions is not excessive, even in light of the similarities Defendant highlighted. No reductions will be made on this basis.

Second, Defendant alleges that Plaintiffs' attorneys spent an "exorbitant" amount of time reviewing records and documents, meeting with clients, preparing for the due process hearing, reading and reviewing transcripts, preparing the witness lest, reviewing the offer of settlement, and responding to the offer. (Doc. # 70, at 31.) It is clear that the due process proceeding involved voluminous exhibits and a substantial number of witnesses. (Admin. Decision, Doc. # 27-1, at 4.) Aside from Defendant's bare contention that these hours are excessive, there is no proof supporting a reduction on this basis. *Barnes*, 168 F.3d at 428.

Third, Defendant launches pointed attacks regarding specific time entries related to emails, phone calls, and document review. (*See* Doc. # 70, at 32–33.) For each of these attacks, Crook either adequately explains the time billed or concedes that the time should not be counted. Specifically, Crook adequately supports one hour billed for time spent reviewing the expert evaluation (Doc. # 75, at 25), approximately three hours billed for reviewing emails with exhibits attached (Doc. # 75, at 26), and two tenths of an hour billed for emails on January 1, 2013 (Doc. # 75, at 26). Crook concedes that two tenths of an hour billed for efforts to call Childs and three tenths of an hour billed for emails to counsel for Defendant

may be excluded. (Doc. # 75, at 26.) Thus, one half hour will be deducted from the number of requested compensable hours for Crook.

Fourth, Defendant challenges the inclusion of identical entries in Plaintiffs' time logs. Defendant points specifically to entries dated February 5, 2013.[5] The description for one entry, counting one tenth of an hour, reads "Email from Resp. – 2/13 no longer available." (Doc. # 69-1, at 14.) The description for the other entry, also counting one tenth of an hour, reads "Email from Resp. – date no longer available." These descriptions are similar, though not identical as Defendant suggests. It is conceivable that Plaintiffs' attorney had to send more than one email regarding an unavailable hearing date. No reductions will be made for these allegedly duplicative entries.

Defendant also contends that Plaintiffs included duplicative entries regarding review of the "final order." One entry is dated June 18, 2013, and it accounts for four tenths of an hour. The other is dated June 19, 2013, and it accounts for seven tenths of an hour. The final order in question, the hearing officer's decision, spanned fifty-two pages. There is nothing excessive about counsel's taking one and one tenth hours to review such a lengthy document. Crook explained that she initially reviewed the document on June 18, 2013. She

[5] Defendant mistakenly listed these entries as dated February 15, 2013.

reviewed it again on June 19, 2013, after consulting with her client. No reduction will be made for these allegedly duplicative entries.

The final allegedly duplicative entries are dated January 11, 2013. One entry amounts to seven and two tenths hours, and the other amounts to two and seven tenths hours. Both entries include the description "Hearing (day 2)." Crook explained that the longer entry corresponded to time actually spent in the due process hearing. The shorter entry should have been attributed to time spent meeting with the client on that same day, both during lunch and after the hearing. It is clear that these entries are not excessive or duplicative, and no reduction will be made on that basis.

Fifth, Defendant argues that the compensable hours are due to be reduced because of the duplicative work of two attorneys. Defendant's objection in this respect consists of a list of allegedly duplicative time entries, a string citation to non-binding cases on the issue, and a general allegation that the work of one attorney would have sufficed. (Doc. # 70, 35–40.) There is nothing unreasonable about the collaborative nature of the attorneys' work in this case. The hearing spanned six non-consecutive days and involved voluminous exhibits. The representation of two attorneys was necessary to ensure effective counsel under such complex circumstances. No reduction will be made on this basis.

**3. *Vague Entries***

In a tepid effort to reduce the overall award, Defendant suggests that Plaintiffs' time entries are unduly vague. True, a fee applicant must set out time entries with sufficient particularity. *Norman*, 836 F.2d at 1303. But this requirement should not be interpreted so as to require an applicant to list the particular document she is reviewing each time she works with the record to prepare a pleading. As the hearing officer's decision indicated, the parties submitted seventy-two documents in conjunction with the due process hearing. (Admin. Decision, Doc. # 27-1, at 4.) Plaintiffs' attorneys submitted time entries sufficient to allow a proper assessment of the reasonableness of requested fee. Accordingly, no reduction will be made for vagueness.

**4. *Clerical Work***

Defendant argues that a portion of Plaintiffs' time entries represents clerical work for which they should not be compensated at an attorney's rate. The majority of the entries Defendant disputes as clerical are for work that in fact requires an attorney's training and skill. For example, Defendant argues that time spent researching legal issues and drafting a brief should be excluded as clerical. These contentions beggar belief.

After a thorough review of the disputed entries, it appears that three and eight tenths hours of Crook's time are attributable to clerical work. The fact that

these hours are for clerical work does not result in their being excluded from the award. Rather, they are not to be compensated at an attorneys' rate. Instead of determining the applicable rate for these clerical hours, one half of the time will be deducted. *See Weatherly v. Ala. State Univ.*, 2:10CV192, 2013 WL 6145315, at *10 (M.D. Ala. Nov. 21, 2013).

**5. *Limited Success***

Plaintiffs' award will not be reduced based on limited success. It is true, as Defendant argues, that Plaintiffs did not attain all the relief requested in the due process complaint. But this fact alone does not justify a reduction.

Counsel for Plaintiffs exercised sound judgment by raising all potential claims in the due process complaint. Failure to raise all claims may have resulted in preclusion of relief in subsequent judicial proceedings. (*See* Doc. # 75, at 18.) And where the unsuccessful matters are based on the same underlying facts and theories as the successful claims, the award should not be reduced to account for the unsuccessful claims. It is only where the unsuccessful claims are "distinct in all respects" from the successful claims that the court should effect a reduction for limited success. *Hensley*, 461 U.S. at 440.

All of the claims Plaintiffs asserted in this matter arose from the same nucleus of facts. Because the unsuccessful matters were not distinct in all respects from the successful matters, they do not warrant a reduction.

**C. Lodestar Amount**

Based on the foregoing analysis, Plaintiffs are entitled to $103,965 in attorneys' fees. Crook is to be compensated at a rate of $250 per hour. Accounting for two and four tenths hours in reductions, she is to be compensated for 358.9 hours. Accordingly, she is entitled to $89,725 in fees. Lasseter is to be compensated at a rate of $200 per hour. He is to be compensated for 71.2 hours. Accordingly, he is entitled to $14,240 in fees.

**D. No Departures from the Lodestar Amount**

The lodestar amount will not be adjusted. The IDEA does not allow for application of bonuses based on success. 20 U.S.C. § 1415(i)(3)(C). The lodestar amount is presumed to reflect a reasonable amount based on all of the relevant *Johnson* factors. *Delaware Valley*, 478 U.S. at 566. There are no reasons justifying a downward adjustment from the lodestar amount.

**E. Reasonable Expenses**

Crook and Lasseter are entitled to $874.69 in expenses. The record reflects that the costs taxed for travel, copies, and postage are reasonable. *See Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983).

## V. CONCLUSION

Accordingly, it is ORDERED as follows:

1. Plaintiffs' motion for attorneys' fees (Doc. # 69) is GRANTED.

2. Plaintiffs are awarded $103,965 in attorneys' fees and $874.69 in costs.

3. Defendant's Motion for Leave to File a Surreply (Doc. # 76) is DENIED.[6]

DONE this 6th day of January, 2016.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE

[6] "A request for attorneys' fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437.